**BLUMENTHAL NORDREHAUG BHOWMIK DE BLOUW LLP**
Norman B. Blumenthal (State Bar #068687)
norm@bamlawca.com
Kyle R. Nordrehaug (State Bar #205975)
kyle@bamlawca.com
Aparajit Bhowmik (State Bar #248066)
aj@bamlawca.com
Jeffrey S. Herman (State Bar #280058)
jeffrey@bamlawca.com
2255 Calle Clara
La Jolla, CA 92037
Telephone: (858)551-1223
Facsimile: (858) 551-1232
Website: www.bamlawca.com

Attorneys for Plaintiff

### UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

WILLIAM GUSTIN, an individual, on behalf and on behalf of all persons similarly situated,

Plaintiff,

v.

CLUB DEMONSTRATION SERVICES, INC., a Corporation; and DOES 1 to 100, inclusive,

Defendants.

Case No. 1:25-cv-00579-JLT-BAM

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION AND DISMISS ALL CLAIMS**

Date:        November 21, 2025
Time:        9:00 a.m.
Courtroom: 4, 7th Floor
Judge:       Hon. Jennifer L. Thurston

Complaint Filed: April 03, 2025
Removal Filed:   May 15, 2025
Trial Date:      None Set

## TABLE OF CONTENTS

I. INTRODUCTION/SUMMARY OF ARGUMENT…………………………………………..1

II. STATEMENT OF FACTS……………………………………………………………….2

III. LEGAL STANDARD……………………………………………………………………...2

IV. ARGUMENT………………………………………………………………………………3

A. The Agreement Is Unconscionable And, Therefore, Unenforceable………………3

1. Unconscionability Is Assessed At The Time The Contract Is Made………3

2. The Arbitration Agreement is Procedurally Unconscionable………………3

a) Heightened Degree Of Procedural Unconscionability Exists………4

i. The Agreement Is A Contract Of Adhesion………………..4

ii. The Agreement Is A Manifestly Oppressive Contract……..6

(a) Condition of Employment And Minimal Time To Consider…………………………………………………6

(b) Legally Complex With No Attorney Present……….7

(c) The Arbitration Rules Were Not Provided…………8

3. The Agreement Is Substantively Unconscionable …………………………8

a) Inserting "To The Maximum Extent Permitted By Law Into Substantively Unconscionable Provisions Does Not Save Them…..9

b) The Agreement Confers A Non-Mutual Benefit To Defendant Via Forced Arbitration Of Claims Against Third Parties……………...10

c) The Agreement Is Overbroad In Scope…………………………...11

d) The Agreement Contains An Illegal PAGA Representative Waiver …………………………………………………………..………..12

e) The Agreement Does Not Guarantee Adequate Discovery……….13

f) The Agreement's Infinite Duration Is Unconscionable…………...15

g) The Agreement Fails To Guarantee Attorneys' Fees To A Prevailing Plaintiff Which Amounts To A Limitation OF Plaintiff's Remedies…………………………………………………………16

h) The Agreement Requires Unlawful "Bellwether Procedures"……16

B. The Arbitration Agreement Cannot Be Cured Through Severance Because The Unconscionability Has Permeated The Entire Agreement………………………..19

C. Class Claims Should Not Be Dismissed, Nor Should This Matter Be Stayed……20

V. CONCLUSION………………………………………………………………………20

## TABLE OF AUTHORITIES

**Cases**

*Alberto v. Cambrian Homecare,*
  91 Cal.App.5th 482 (2023)................................................................................ 9, 13

*Armendariz v. Foundation Health Psychcare Services, Inc.,*
  24 Cal.4th 83 (2000)................................... 1, 3, 4, 5, 10, 13, 14, 16, 17, 19, 20

*AT&T Mobility LLC v. Concepcion,*
  563 U.S. 333 (2011) ........................................................................................ 2, 3

*Baltazar v. Forever 21, Inc.,*
  62 Cal. 4th 1237 (2016)......................................................................................... 8

*Beco v. Fast Auto Loans, Inc.*
  86 Cal.App.5th 292 (2022)........................................................ 1, 3, 13, 14, 20

*Briggs v. Merck Sharp & Dohme,*
  796 F.3d 1038 (9th Cir. 2015) ......................................................................... 17

*Calzadillas v. Wonderful Co, LLC,*
  2019 U.S. Dist. LEXIS 92706 (E.D. Cal. June 3, 2019) ............................... 7

*Carbajal v. CWPSC, Inc.,*
  245 Cal.App.4th 227 (2016)................................................................................ 9

*Carmona v. Lincoln Millennium Car Wash, Inc., 226 Cal. App.*
  226 Cal.App.4th 74 (2014)........................................................................... 1, 8

*Chavarria v. Ralphs Grocery Co.,*
  733 F.3d 916 (9th Cir. 2013)..................................................................... 4, 5, 6

*Cook v. Univ. of S. California,*
  102 Cal.App.5th 312 (2024)........................................................... 1, 10-13, 15

*Dougherty v. Roseville Heritage Partners,*
  47 Cal.App.5th 93 (2020)................................................................................. 19

*Dunson v. Cordis Corp.,*
  854 F.3d 551 (9th Cir. 2017) .......................................................................... 17

*Fitz v. NCR Corp.,*
  118 Cal.App.4th 702 (2004).......................................................................... 8, 14

*Gonzalez v. CEVA Logistics U.S., Inc.,*
  2016 U.S. Dist. LEXIS 150766 (N.D. Cal. Oct. 31, 2016). .......................... 6

*Grand Prospect Partners, L.P. v Ross Dress for Less, Inc.,*
  232 Cal.App.4th 1332 (2015) ........................................................................... 6

*Hasty v. AAA. etc.,*
  98 Cal.App.5th 1041 (2023) .............................................................................. 9

*Ingle v. Circuit City Stores, Inc.*,
  328 F.3d 1165 (9th Cir. 2003)..................................................................................... 4

*Iskanian v. CLS Transp. LA, LLC*,
  59 Cal.4th 348 (2014)............................................................................................ 1, 13

*Knutson v. Sirius XM Radio Inc.*,
  771 F.3d 559 (9th Cir. 2014)...................................................................................... 2

*Lou v. MA Labs.,* Inc.,
  2013 U.S. Dist. LEXIS 70665 (N.D. Cal. May 17, 2013).......................................... 19

*MacClelland v. Cellco Partnership*,
  609 F.Supp.3d 1024 (N.D. Cal. 2022)………………………………………….…1, 17, 18

*Mills v. Facility Solutions Group, Inc.*,
  84 Cal.App.5th 1035 (2022)................................................................................... 9, 14

*Murphy v. Check 'N Go of California, Inc.*,
  156 Cal.App.4th 138 (2007)...................................................................................... 20

*Murrey v. Superior Court*, (2023)
  87 Cal.App.5th 1223 (2023)......................................................................................... 9

*Nagrampa v. MailCoups, Inc.,*
  469 F.3d 1257 (9th Cir. 2006)................................................................................... 19

*Najarro v. Sup. Ct.*,
  70 Cal.App.5th 871 (2021) ....................................................................................... 13

*Navas v. Fresh Venture Foods, LLC,*
  85 Cal.App.5th 626 (2022) ....................................................................................... 10

*Nyulassy v. Lockheed Martin Corp.*,
  120 Cal.App.4th 1267 (2004)................................................................................. 1, 10

*OTO, L.L.C. v. Kho,*
  8 Cal.5th 111 (2019)............................................................................. 1, 4, 6, 7, 9, 19

*Pinnacle Museum Tower Assn. v. Pinnacle Mkt. Dev. (US), LLC,*
  55 Cal.4th 223 (2012)............................................................................................... 2, 4

*Pokorny v. Quixtar, Inc.*,
  601 F.3d 987 (9th Cir. 2010)....................................................................................... 5

*Poublon v. C.H. Robinson Co.*,
  846 F.3d 1251 (9th Cir. 2017)................................................................................... 2, 4

*Ramirez v. Charter Communications, Inc.*,
  16 Cal.5th 478 (2024)................................................................................................ 3, 9

*Ronderos v. USF Reddaway, Inc.*
  114 F.4th 1080 (9th Cir. 2024).................................................................................... 4

*Sanchez v. Valencia Holding Co., LLC,*
  61 Cal.4th 899 (2015)............................................................................................. 1, 3, 5

*Serpa v. California Sur. Investigations, Inc.*,
  215 Cal.App.4th 695 (2013)................................................................................. 2, 6

*Sonic-Calabasas A, Inc. v. Moreno*,
  57 Cal.4th 1109 (2013)........................................................................................ 9

*Stirlen v. Supercuts, Inc.*
  51 Cal.App.4th 1519 (1997)................................................................................ 10

*Subcontracting Concepts (CT), LLC v. De Melo,*
  34 Cal.App.5th 201 (2019) .............................................................................. 3, 13

*Ting v. AT&T,*
  319 F.3d 1126 (9th Cir. 2003)............................................................................. 5

*Trivedi v. Curexo Tech.y Corp*.
  189 Cal.App.4th 387 (2010) ............................................................................... 8

*Viking River Cruises, Inc. v. Moriana*,
  596 U.S. 639 (2022) ........................................................................................ 1, 13

*Zee Medical Distributor Assn. Inc. v. Zee Medical, Inc.*,
  80 Cal.App.4th 1 (2000) .................................................................................... 15

*Zullo v. Sup.Ct.*,
  197 Cal.App.4th 477 (2011) ................................................................................ 8

**Other Authorities**

Civ. Code, § 1670.5 ....................................................................................... 3, 13

## I.    <u>INTRODUCTION/SUMMARY OF ARGUMENT</u>

Defendant Club Demonstration Services, Inc.'s ("Defendant") Motion to Compel Arbitration and Dismiss all Claims (Defendant's "Motion" – Dkt. 21-1) is a non-starter and should be denied, as Defendant's Arbitration Agreement (the "Agreement") is unconscionable and unenforceable. Although unconscionability is measured on a sliding scale, meaning an agreement with a high degree of procedural unconscionability needs only a low degree of substantive unconscionability to be found unenforceable (and vice versa) (see e.g., *Sanchez v. Valencia Holding Co., LLC,* 61 Cal. 4th 899 (2015)), **the Agreement at issue here has high degrees of both forms of unconscionability**.

Specifically, the Agreement between Plaintiff William Gustin ("Plaintiff") and Defendant is *per se* unconscionable as a contract of adhesion that: **(1)** confers a non-mutual benefit to defendant via forced arbitration of claims against third parties (See *Cook v. Univ. of S. Cal.*, 102 Cal.App.5th 312 (2024); *Nyulassy v. Lockheed Martin Corp.*, 120 Cal.App.4th 1267 (2004) ); **(2)** is overbroad in scope (See *Cook, supra,* 102 Cal.App.5th  at  329-30); **(3)** includes an illegal waiver of unwaivable representative Private Attorneys General Act ("PAGA") claims (See *Iskanian v. CLS Transp. LA, LLC*, 59 Cal. 4th 348, 367 (2014), and abrog. on other grounds by *Viking River Cruises, Inc. v. Moriana*, 596 U.S. 639 (2022)); **(4)** does not guarantee fair and adequate discovery in accordance with *Armendariz v. Found. Health Psychcare Srvs., Inc.*, 24 Cal.4th 83, 97 (2000) (See *Beco v. Fast Auto Loans, Inc.*, 86 Cal.App.5th 292 (2022)); **(5)** binds Plaintiff to an unconscionable duration (See *Cook, supra,* 102 Cal.App.5th at 326); **(6)** limits the remedies available to Plaintiff (*Armendariz, supra,* 24 Cal.4th at 103-104); **(7)** requires unlawful "Bellwether Arbitration Procedures" that create a chilling effect on Plaintiff's claims (See *MacClelland v. Cellco P'ship.*, 609 F. Supp. 3d 1024 (N.D. Cal 2022)); and **(8)** was presented a layperson, on a take-it-or-leave-it basis with no opportunity to negotiate its terms or discuss with an attorney. See *OTO, L.L.C. v. Kho,* 8 Cal.5th 111, 126 (2019).

Further, oppression generally takes the form of a contract of adhesion, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it. *See Carmona v. Lincoln Millennium Car Wash,*

*Inc.*, 226 Cal.App.4th 74 (2014); see *Serpa v. Cal. Sur. Investig., Inc.*, 215 Cal.App.4th 695, 704 (2013) ["It is well settled that adhesion contracts in the employment context, that is, those contracts offered to employees on a take-it-or-leave-it basis, typically **contain some aspects of procedural unconscionability**."].[1] That is exactly what has transpired here. See generally, Declaration of William Gustin ("Gustin Decl.").

Lastly, Defendant's attempt to rely on state trial court orders **in separate, unrelated matters against an entity that is not even named in this putative class action,** is entirely improper, and such irrelevant evidence should be stricken and disregarded in its entirety.[2]

For the foregoing reasons, discussed further herein, Defendant's Motion should be denied.

## II.   STATEMENT OF FACTS

On November 12, 2021, Plaintiff electronically signed the Agreement, which was presented to Plaintiff in a procedurally unconscionable manner and contained numerous substantively unconscionable provisions. See Defendant's Declaration of Andrew Beros ("Beros Decl."); Dkt. 21-3, Exhibit B [Agreement].

## III.   LEGAL STANDARD

Under California law, the "**party seeking arbitration bears the burden of proving the existence of an arbitration agreement**[.]" *Pinnacle Museum Tower Assn. v. Pinnacle Mkt. Dev. (US), LLC*, 55 Cal. 4th 223, 236 (2012); see also *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014) [the burden of proving the existence of an arbitration agreement is "by a preponderance of the evidence."].

Additionally, Arbitration Agreements, or provisions thereof, can be "**invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability,**' …" *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) [internal citations omitted].  To establish unconscionability under California law, the party opposing arbitration must demonstrate that the entire contract, or a specific clause in it, is both procedurally and substantively unconscionable [Citation.]. *Poublon v. C.H. Robinson Co.,* 846 F.3d 1251, 1260 (9th Cir. 2017).

---

[1] Emphasis added throughout unless otherwise indicated

[2] Plaintiff's Objections to – and Request to Strike – Defendant's Requests for Judicial Notice And Evidence are filed concurrently herewith.

## IV.    ARGUMENT

### A.    The Agreement Is Unconscionable And, Therefore, Unenforceable

Notwithstanding the foregoing, the Agreement is unconscionable and therefore, unenforceable. The "savings clause" of 9 U.S.C. § 2 "permits agreements to arbitrate to be invalidated by 'generally applicable contract defenses, such as fraud, duress, **or unconscionability**,' but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." *Concepcion*, *supra*, 563 U.S. at 339 [internal citation omitted].

"The prevailing view is that procedural and substantive unconscionability must both be present in order for a court to exercise its discretion to refuse to enforce a contract or clause under the doctrine of unconscionability…**[b]ut they need not be present in the same degree**." *Sanchez*, *supra,* 61 Cal.4th at 910. Courts generally view procedural and substantive unconscionability on a sliding scale, whereby "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Armendariz, supra*, 24 Cal.4th at 114.

### 1.    Unconscionability Is Assessed At The Time The Contract Is Made

As unconscionability is determined **at the time the contract is made**, an unconscionability analysis does not consider what claims are eventually brought. Civil Code § 1670.5; see also *Ramirez v. Charter Communications, Inc.,* 16 Cal.5th 478, 493 (2024) ["[W]hether a contract is fair or works unconscionable hardship is determined with **reference to the time when the contract was made and cannot be resolved by hindsight by considering circumstances of which the contracting parties were unaware**."]. Thus, arbitration agreements that purport to waive a plaintiff's right to pursue representative PAGA actions, claims for public injunctive relief, or "small wage claims" are unconscionable **even if the plaintiff is not pursuing those claims**. *See Subcontracting Concepts (CT), LLC v. De Melo,* 34 Cal.App.5th 201, 212 (2019) [finding PAGA waiver unconscionable in an action that did not assert PAGA claims, because unconscionability is evaluated at the time the contract is made].

### 2.    The Arbitration Agreement is Procedurally Unconscionable

"The procedural element of unconscionability focuses on 'oppression or surprise **due to**

---

**unequal bargaining power**.'" *Poublon, supra*, 846 F.3d at 1260 [quoting *Pinnacle Museum, supra*, 55 Cal. 4th at 246]; see also *Chavarria v. Ralphs Grocery Co.*, 733 F.3d 916, 922 (9th Cir. 2013) ["Procedural unconscionability concerns the manner in which the contract was negotiated and the respective circumstances of the parties at that time, focusing on the level of oppression and surprise involved in the agreement."] The Court examines "'the manner in which the contract was negotiated and the circumstances of the parties at that time.' [Citation.]" *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1171 (9th Cir. 2003). "**Oppression addresses the weaker party's absence of choice and unequal bargaining power that results in no real negotiation**…. [Citation.]" *Chavarria, supra*, 733 F.3d at 922 [internal quotation marks omitted].

### a)    Heightened Degree Of Procedural Unconscionability Exists

"To determine whether the arbitration agreement involves more than 'minimal' procedural unconscionability, we consider 'whether circumstances of the contract's formation created such oppression or surprise that closer scrutiny of its overall fairness is required.'" *Ronderos v. USF Reddaway, Inc.,* 114 F.4th 1080, 1090 (9th Cir. 2024) , *quoting OTO, supra*, 447 P.3d at 690. Oppression means a "lack of negotiation and meaningful choice." *Id., quoting Pinnacle, supra,* 55 Cal. 4th at 246. "Surprise may occur when 'the allegedly unconscionable provision is hidden within a prolix printed form.'" *Id.,* at 1091, *quoting Pinnacle* at 246. "A contract may also involve surprise when its substance is 'opaque.'" *Id., quoting OTO, supra,* 8 Cal.5th at 127  [finding agreement involved surprise because its sentences were "complex [and] filled with statutory references and legal jargon."].   Here, as addressed below, a heightened degree of procedural unconscionability exists.

### i.    The Agreement Is A Contract Of Adhesion

As a starting point, the "[u]nconscionability analysis begins with an inquiry into whether **the contract is one of adhesion**." *Armendariz, supra*, 24 Cal.4th at 113. The California Supreme Court has held that the "term [contract of adhesion] signifies a standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it." *Id.* at 113 (citation omitted). Courts have since recognized that such contracts are "procedurally unconscionable under California law[.]"

*Chavarria*, *supra,* 733 F.3d at 923 (citing *Ting v. AT&T*, 319 F.3d 1126, 1148 (9th Cir. 2003)); see also *Sanchez*, *supra*, 61 Cal. 4th at 915 ["[T]he adhesive nature of the contract is sufficient to establish some degree of procedural unconscionability."].

Adhesive contracts are particularly procedurally unconscionable when imposed in the employment context because "the economic pressure exerted by employers…may be particularly acute…few employees are in a position to refuse a job because of an arbitration agreement." *Armendariz, supra,* 24 Cal.4th at 115. "Contracts of adhesion are at least somewhat procedurally unconscionable under California law." *Id.* "[A] contract is procedurally unconscionable under California law if it is a standardized contract, drafted by the party of superior bargaining strength, that relegates to the subscribing party only the opportunity to adhere to the contract or reject it." *Pokorny v. Quixtar, Inc.*, 601 F.3d 987, 996 (9th Cir. 2010).

Here, as with most employment contracts, Defendant was the clear drafter and presented it to its employees as part of the onboarding process, among a litany of other documents **Plaintiff was required to review and sign**. Gustin Decl., ¶ 4; see also Dkt. 21-3, Beros Decl., ¶ 5 [Defendant "provides onboarding documents, including the Arbitration Agreement, to prospective employees…"; see also *Id.,* <u>Exhibit A</u> [Offer Letter], p. 11 [Job **requirements** include "**timely and satisfactory completion of all new hire paperwork**."]. The Agreement itself is a contract of adhesion that was exclusively prepared by Defendant with no bargaining power afforded to Plaintiff. Gustin Decl., ¶¶ 3-4; Dkt. 21-3, Beros Decl., ¶ 11 ["The documents included in the pick list are provided in static image format, similar to a PDF, **the contents of which cannot be edited or deleted**..."]. To that end, Plaintiff was presented with the Agreement during the employment onboarding process, was told it was a prerequisite for beginning training and employment, and had no guidance from any employee of Defendants as to how to complete the onboarding documents, nor what provisions were required, and which were not. Gustin Decl., ¶¶ 3-4. Plaintiff was rushed through the onboarding process by Defendant, was not given any real chance to ask questions, and was not afforded any opportunity to change any provisions of the Agreement. *Id.* at ¶¶ 4-6. Therefore, the Agreement is an unconscionable contract of adhesion.

/ / /

### ii. The Agreement Is A Manifestly Oppressive Contract

Under California law, "[o]ppression occurs where a contract involves lack of negotiation and meaningful choice[.]" *OTO, L.L.C, supra,* 8 Cal.5th at 126. "The circumstances relevant to establishing oppression include, but are not limited to (1) the amount of time the party is given to consider the proposed contract; (2) the amount and type of pressure exerted on the party to sign the proposed contract; (3) the length of the proposed contract and the length and complexity of the challenged provision; (4) the education and experience of the party; and (5) whether the party's review of the proposed contract was aided by an attorney." *Grand Prospect Partners, L.P. v Ross Dress for Less, Inc.,* 232 Cal. App. 4th 1332, 1348 (2015).

### (a) Condition of Employment And Minimal Time To Consider

"**It is well settled that adhesion contracts in the employment context, that is, those contracts offered to employees on a take-it-or-leave-it basis, typically contain some aspects of procedural unconscionability**." *Serpa, supra,* 215 Cal.App.4th at 704; see also *Chavarria*, *supra*, 733 F.3d at 922-23 [arbitration agreements are unconscionable on a take-it-or-leave-it basis].

Here, Defendant presented Plaintiff with the Agreement as part of the onboarding process, and **Plaintiff was required to sign it before he was able to begin training or work.** Gustin Decl., ¶¶ 4-6; see also Dkt. 21-3, Beros Decl., ¶ 5 [Defendant "provides onboarding documents, including the Arbitration Agreement, to prospective employees…"]. That, coupled with Plaintiff's lack of sophistication (detailed below) did not provide Plaintiff any opportunity – let alone a "meaningful opportunity" –  to opt-out. *Id.;* see also *Gonzalez v. CEVA Logistics U.S., Inc.,* 2016 U.S. Dist. LEXIS 150766 (N.D. Cal. Oct. 31, 2016). Moreover, although Defendant may "claim" Plaintiff could have time to review it and ask questions, Plaintiff was pressured into signing it promptly, before beginning training or work. Gustin Decl., ¶¶ 4-6.

Further, while the Agreement was a standalone document, it was presented with the litany of other onboarding documents/acknowledgments to Plaintiff by Defendant, that Plaintiff was required to sign it as a condition of employment, prior to beginning work. Gustin Decl., ¶¶ 3-4, 6; Dkt. 21-3, Beros Decl., ¶¶ 6-7. Therefore, Plaintiff was not provided sufficient time to consider the Agreement. See, e.g., *OTO, supra*, 8 Cal.5th at 127 [finding unconscionability in part because the

---

employee was expected to immediately sign an arbitration agreement without the opportunity to consult with counsel and would have lost wages if he spent time spent reviewing the agreement]; *Calzadillas v. Wonderful Co, LLC,* 2019 U.S. Dist. LEXIS 92706 at*26-27 (E.D. Cal. June 3, 2019) [employees were pressured "just to sign [the agreement] because there was no time to read [it]."].

Indeed, the California Supreme Court has warned against the oppression present under this type of circumstance, explaining that employees who have already been employed by the defendant before signing the agreement "have likely come to rely on the benefits of employment. For many, the sudden loss of a job may create major disruptions, including abrupt income reduction and an unplanned reentry into the job market." *OTO, supra*, 8 Cal.5th at 127. Accordingly, there was a significant amount of economic pressure exerted on Plaintiff, who was financial reliant on this job, to sign the Agreement. Gustin Decl., ¶ 6.

### (b) <u>Legally Complex With No Attorney Present</u>

Defendant's Agreement is three pages long in small font, mostly single-spaced, with twelve different sections. The substance of the Agreement is "complex, filled with statutory references and legal jargon." *OTO, supra,* 8 Cal.5th at 128. Specifically, the Agreement refers to multiple complex claims, statutes, and agencies with which Plaintiff is unfamiliar. See Dkt. 21-3, <u>Exhibit B</u> [Agreement] at p. 15;[3] see also *OTO*, *supra*, 8 Cal.5th at 128 [finding unconscionability where agreement was "**filled with statutory references**," including to "**unspecified 'local, state or federal laws or regulations**"].

Additionally, Plaintiff is a layperson who has no legal training. Gustin Decl., ¶ 5. He is not familiar with the intricacies and limitations of the Agreement. Plaintiff does not have experience drafting or reviewing the terms of arbitration agreements, nor is he familiar with the relevant statutes or governmental agencies, or the case law regarding unconscionability. *Id.* Therefore, Plaintiff was not educated or experienced in the relevant areas of law when being bound to the Agreement. To

---

[3] Referencing, *inter ilia*, "Title VII of the Civil Rights Act of 1964; the Age Discrimination in Employment Act; the Equal Pay Act of 1963; the California Fair Employment and Housing Act; the California Labor Code; the Fair Labor Standards Act; the Americans with Disabilities Act; and other federal, state and local employment laws" and "the California Department of Fair Employment and Housing, the Equal Employment Opportunity Commission, or the National Labor Relations Board."

that end, as set forth above, Plaintiff did not have an attorney present, nor was he afforded any opportunity to independently consult an attorney. *Id.* at ¶¶ 5-6. In fact, noticeably absent from the Agreement and the Beros Declaration is any ability for Plaintiff to consult with an attorney before he was forced to sign away his rights to court or trial by jury. See generally, Dkt. 21-3.

### (c) The Arbitration Rules Were Not Provided

The Agreement did not specify which rules would apply, nor did Defendant provide a copy of said rules to Plaintiff. See Dkt. 21-3, Exhibit B [Agreement]; see also Gustin Decl., at ¶ 4. Accordingly, Plaintiff is forced to independently locate and obtain arbitration rules, which Courts have found procedurally unconscionable. See *Zullo v. Sup.Ct.*, 197 Cal.App.4th 477, 485-486 (2011) [oppressive to require employee to make independent inquiry to find rules to understand what employee was about to sign]; see also *Trivedi v. Curexo Tech.y Corp.* 189 Cal.App.4th 387, 393(2010) ["**the failure to provide a copy of the arbitration rules…supported a finding of procedural unconscionability.**"]; *Baltazar, supra,* 62 Cal.4th at 1246 [Courts scrutinize the "unconscionability of terms that were **'artfully hidden' by the simple expedient of incorporating them by reference rather than including them in or attaching them to the arbitration agreement**"]; *Carmona, supra,* 226 Cal.App.4th 75 at 84 ["Failure to provide the applicable arbitration rules **is another factor that supports procedural unconscionability.**"]; *Fitz v. NCR Corp.*, 118 Cal.App.4th 702, 721 (2004) ["NCR's ACT policy similarly incorporates arbitration rules that **were not attached and requires the other party to go to another source in order to learn the full ramifications of the arbitration agreement.**"].

Similarly, here, Defendant's failure to attach or provide a copy of the applicable arbitration rules is procedurally unconscionable. Even further, the Agreement requires Plaintiff to agree to rules **that may not even be in existence at the time the Agreement was executed**. See Dkt. 21-3, Exhibit B [Agreement], p. 16 ["The arbitration will be administered by JAMS and conducted in accordance with the rules and procedures provided by the JAMS Rules in effect at the time **the Claim is submitted**."]. In other words, Plaintiff was **forced in 2021** (when the Agreement was signed) **to agree on arbitration rules in 2025** (when Plaintiff's claims were submitted). That is inherently unfair and unconscionable.

---

### 3. The Agreement is Substantively Unconscionable

"The substantive element of unconscionability 'pertains to the fairness of an agreement's actual terms and to assessments of whether they are overly harsh or one-sided.'" *Carbajal, supra*, 245 Cal.App.4th at 247 [internal citations]; see also *OTO, supra*, 8 Cal.5th at 129-130. California courts have applied various tests to determine whether an agreement is substantively unconscionable, including whether the terms are "overly harsh," "unduly oppressive," or "so one-sided as to shock the conscience." See *Sonic-Calabasas A, Inc. v. Moreno*, 57 Cal. 4th 1109, 1145 (2013). "Substantive unconscionability may be shown if the disputed contract provision falls outside the nondrafting party's reasonable expectations." *See Murrey v. Sup. Ct.*, 87 Cal.App.5th 1223, 1246 (2023) ; *see also Alberto v. Cambrian Homec*are, *supra,* 91 Cal.App.5th 482, 493 (2023) ["A facially illegal provision, in direct contravention of the Labor Code, is unconscionable".] The ultimate issue is whether the terms of the contract are sufficiently unfair, in view of all relevant circumstances, that a court should withhold enforcement. *Ramirez, supra*, 16 Cal.5th at 493, 495.

Here, as addressed below, the Agreement is substantively unconscionable to a large degree, such that the entire agreement is permeated with unconscionability.

### a. Inserting "To The Maximum Extent Permitted By Law" Into Substantively Unconscionable Provisions Does Not Save Them

Often times, employers will insert unconscionable provisions followed by "to the extent permitted by law" in the hope that either "employees would not challenge the unlawful provision, but if they do, the court would simply modify the agreement to include the bilateral terms the employer should have included in the first place." *Hasty v. AAA. etc.*, 98 Cal.App.5th 1041, 1065 (2023), quoting *Mills v. Facility Solut. Grp., Inc.,* 84 Cal.App.5th 1035, 1045 (2022).) The court rejected this maneuver: "[t]he fact that the provision applies to only the 'extent permitted by law' does not save it because the employee would have no way of knowing what would be covered or not by this provision." *Id*. at 1062.

The same is true here, and Defendant's inclusion of "to the maximum extent permitted by law" into the Agreement does not cure it of the overt unconscionability. See e.g., Dkt 21-3, Exhibit B [Agreement], p . 17 ["To the maximum extent permitted by law"]; Exhibit A [Offer Letter], p. 11

### b. The Agreement Confers A Non-Mutual Benefit To Defendant Via Forced Arbitration Of Claims Against Third Parties

In *Armendariz*, the California Supreme Court found that a unilateral obligation may be so one-sided in favor of the employer that it is substantively unconscionable. *Armendariz, supra*, 24 Cal.4th at 117-18. "'[T]he paramount consideration in assessing [substantive] conscionability is **mutuality**.'" *Nyulassy v. Lockheed Martin Corp.*, 120 Cal.App.4th 1267, 1281 (2004).) Indeed, arbitration agreements that are "**one-sided and harsh**" are substantively unconscionable. *Navas v. Fresh Venture Foods, LLC,* 85 Cal.App.5th 626, 636 (2022).) citing *Stirlen v. Supercuts, Inc.,* 51 Cal.App.4th 1519, 1540–1541(1997) .

Recently binding case law confirmed that an arbitration agreement which confers a non-mutual benefit to employers via forced arbitration of claims with third parties is unconscionable. See *Cook, supra*, 102 Cal.App.5th. In *Cook*, the plaintiff was required to arbitrate her claims against not only her employer, but also her employer's related entities "including officers, trustees, administrators, employees, and agents."' *Id*. at 319. However, the agreement did not require these unnamed third parties to arbitrate their claims against the plaintiff. Id. at 326. Accordingly, "[t]**he plain language of the arbitration agreement thus provides a significant benefit to [the defendant]'s related entities without any reciprocal benefit to [the plaintiff]**." *Id*. at 326-328.

Here, just as in *Cook*, Plaintiff has not only waived his right to a jury trial as to claims against Defendant, but also against any of the listed third parties. Dkt. 21-3, <u>Exhibit B</u> [Agreement] p. 15. Specifically, the Agreement requires:

> For this reason, except as otherwise provided in this Mutual Agreement to Arbitrate Claims ("Agreement"), you and Advantage Sales & Marketing LLC (hereinafter, the "Company") agree to resolve in binding arbitration all claims or controversies ("Claims") **that the Company may have against you**, or that **you (and no other party) may have against _any_ of the following**: **(1)** the Company, **(2)** the Company's **parents, subsidiaries and affiliated entities**, including but not limited to Daymon Worldwide Inc. (hereinafter, "Affiliated Entities"), **(3)** the **Company's and its Affiliated Entities' benefit plans or the plans' sponsors, fiduciaries, administrators, affiliates and agents**, **(4)** all **clients and/or customers of the Company or its Affiliated Entities, (5) the officers, directors, employees or agents of the Company, the Affiliated Entities, and clients and/or customers**, in their capacity as such or otherwise, and **(6) all successors and assigns of any of them**.

*Id.*

---

Thus, under the plain language of the Agreement, Plaintiff is required to arbitrate all claims against not only Advantage Sales & Marketing LLC ("the Company"), but also the Company's "Affiliated Entities," the Company's Affiliated Entities' "customers," and the Company's Affiliated Entities' customers' "successor and assigns", along with the litany of other potential entities and individuals identified in the Agreement.  However, there is no such requirement that this list of third parties waived their right to a jury trial and arbitrate all claims against Plaintiff;  rather only claims "the Company may have against you [i.e., Plaintiff]" are required to be  arbitrated. *Id.* Accordingly, **"[t]he plain language of the arbitration agreement thus provides a significant benefit" to Defendants' employees who were acting within the scope of his or her employment with the Company "without any reciprocal benefit to" Plaintiff**. *Cook, supra*, 102 Cal. App. 5th 328.

Therefore, as in *Cook*, this provision is likewise egregiously unconscionable.

### c.  The Agreement Is Overbroad In Scope

Pursuant to the Agreement, the scope of claims to be arbitrated, includes, "**all claims or controversies ("Claims")** that the Company may have against you, or that **you** (and no other party) **may have against any of the [third parties identified in Section IV(A)(3)(b) above]**." Dkt 21-3, Exhibit B [Agreement], p. 15. The Agreement then adds examples of "Claims" which,

> include, **but are not limited to**, all statutory, contractual and/or common law claims including, but not limited to, claims arising under Title VII of the Civil Rights Act of 1964; the Age Discrimination in Employment Act; the Equal Pay Act of 1963; the California Fair Employment and Housing Act; the California Labor Code; the Fair Labor Standards Act; the Americans with Disabilities Act; and other federal, state and local employment laws. Both you and the Company may seek to enforce this Agreement.

*Id.*

Conspicuously, the Agreement in no way limits the "Claims" to those which are related to Plaintiff's employment with Defendant. *Id.* To the contrary,  **the Agreement contains the broadest possible scope of claims that Plaintiff would have against Defendant or any of the listed third parties**.  Theoretically,  Plaintiff could get into a car accident with an electrician that worked as one of Defendant's Affiliated Entities' agent's successor, and under the plain language of this Agreement, he would be required to arbitrate his claims against that driver. Defendant's Motion *conveniently* overlooks the overbreadth of the Agreement's scope and focuses only on disputes

---

related to Plaintiff's employment. See Dkt 21-1 [Motion] at 4:12-25, 5:14-27. Clearly, that is not all the Agreement unlawfully requires Plaintiff to arbitrate.

This issue was also addressed by the Court of Appeal in *Cook*, which confirmed that requiring an employee to arbitrate such a broad scope of claims is unconscionable. Specifically, in *Cook v. Univ. of S. California*, the arbitration agreement applied to all claims "whether or not arising out of Employee's University employment, remuneration or termination." *Cook, supra*, 102 Cal. App. 5th at 321. The Court of Appeal explained:

> **It is difficult to see how it is justified to expect [plaintiff]—as a condition of her employment at the university—to give up the right to ever sue a USC employee in court for defamatory statements or other claims that are completely unrelated to Cook's employment**. We find the trial court did not err in holding that the agreement's broad scope is substantively unconscionable.

*Id*. at 325.

The same is true here, as the above language requires that Plaintiff, as a condition of his employment, give up his rights to sue Defendant (and the litany of third parties) in court for claims **"all claims and controversies,"** without limitation. Dkt 21-3, Exhibit B [Agreement], p. 15. Just as in *Cook,* this broad scope s certainly substantively unconscionable here.

### d.  The Agreement Contains An Illegal PAGA Representative Waiver

The Agreement also requires employees to waive their unwaivable claims under PAGA. Specifically,  the Agreement provides, in pertinent part,

> Under this Agreement, any Claims will be decided by an arbitrator rather than by a judge or jury.
> …
> Claims must be brought by either you or Company in your or its individual capacity, not as plaintiffs or class members in any purported class or collective proceeding, and the arbitrator shall not have the power to hear the arbitration or award relief as a class or collective action. Both you and Company waive the right to bring, maintain, participate in, or receive money from any class or collective proceeding. Notwithstanding any provision of the JAMS Rules, a court of competent jurisdiction (and not an arbitrator) shall resolve any dispute about the application or enforceability of any provision of this paragraph.

Dkt. 21-3, Exhibit B [Agreement], p. 15-16.

By requiring Plaintiff to individually arbitrate  "*any* Claims" (defined as "all claims or controversies" against Defendant and/or any of the listed third parties) ***and*** waiving Plaintiff's

---

"**right to bring, maintain, participate in, or receive money from any class or collective proceeding**," the Agreement attempts to enforce an illegal representative PAGA waiver. *Id.*

The law is clear: representative claims brought under the PAGA are **unwaivable**. *Iskanian, supra,* 59 Cal.4th at 367 [abrog. on other grounds by *Viking River*]. In *Najarro v. Sup. Ct.*, 70 Cal. App. 5th 871 (2021), the Court held the trial court erred in failing to find the PAGA waiver was unconscionable. *Id*. at 883. The Court found that such a provision, without a PAGA carve-out, attempted to require employees to waive their unwaivable right to bring an action under the PAGA. *Id*. The Court of Appeal further noted, "[i]t is irrelevant that petitioners have not brough a PAGA action." *Id*. at 882-883 [Citing *Subcontracting Concepts, supra,* 34 Cal.App.5th at 212 ["The question in **determining unconscionability**, however, **does not involve comparing the terms of the arbitration clause with the nonarbitration claims respondent is pursuing**."]

Likewise in *Alberto, supra,* 91 Cal.App.5th, an employee signed an arbitration agreement that "no form of class, collective, or representative action" would be maintained without the parties' mutual consent." The Court of Appeal found that such a blanket waiver of the plaintiff's rights under PAGA weas unconscionable. *Id*. at 496 ["[b]oth before and after *Viking River Cruises*, blanket waivers of PAGA claims are unconscionable."].

Here, just as in *Najarro* and *Alberto*, the Agreement precludes Plaintiff from bringing a representative claim under the PAGA in civil court, **thus forcing Plaintiff to waive an unwaivable right**. Accordingly, just as in *Najarro* and *Alberto*, this provision is unconscionable. As explained by the Court of Appeal in *Najarro*, **when determining the unconscionability of this paragraph, it is irrelevant" that Plaintiff has not alleged a PAGA cause of action in this suit**, because unconscionability is judged "at the time [the contract is] made." Civ. Code, § 1670.5; *Cook*, *supra*, at n.2. This provision is, therefore, substantively unconscionable.

### e.  The Agreement Does Not Guarantee Adequate Discovery

Arbitration agreements that fail to guarantee more than minimal discovery are substantively unconscionable, particularly where statutory rights are involved. *Armendariz, supra*, 24 Cal.4th at 102. *Beco v. Fast Auto Loans, Inc*. 86 Cal.App.5th 292 (2022) is instructive. The arbitration agreement there stated:

The arbitrator shall have the authority to allow for appropriate discovery and exchange of information before a hearing, including but not limited to production of documents, information requests, depositions, and subpoenas.

*Beco, supra,* 86 Cal.App.5th at 311-312.

After acknowledging that limitations on discovery are not inherently unconscionable, *Beco* found that this provision did not place reasonable limitations on discovery. *Id.* at 312. **Even though the arbitration agreement "incorporated by reference [the AAA rules]", *Beco* rejected the defendant's argument that discovery would proceed according to the AAA's rules because there was no mention of discovery proceeding according to the AAA's rules in the agreement**. *Id.* "Indeed, by its plain language, the subparagraph puts the issue of whether to allow discovery or not entirely in the arbitrator's hands." *Id.* The takeaway from *Beco* is that "[g]iving the arbitrator unfettered discretion over how much discovery does or does not take place is inconsistent with allowing for more than minimal discovery", as required under *Armendariz. Id., citing Armendariz, supra*, 24 Cal.4th at 102.

Further, in *Fitz v. NCR Corp*., 118 Cal. App. 4th 702 (2004), the Court found the arbitration agreement substantively unconscionable because it limited discovery to two depositions, with additional discovery permitted only if the party could show a compelling need. *Id.* at 716.

Similarly, in *Mills v. Facility Solutions Group, Inc.*, 84 Cal. App. 5th 1035 (2022), where the Court, following *Fitz*, held:

We conclude the arbitration agreement's discovery provision is substantively unconscionable **because it does not provide for sufficient discovery for Mills to arbitrate his statutory claims**. (Citations.)

*Mills, supra*, 84 Cal.App.5th at 1060.

Here, just as in *Beco*, the Agreement incorporates by reference the "JAMS Rules" that are "in effect at the time the Claim is submitted." Dkt. 21-3, Exhibit B [Agreement], p. 16. Notwithstanding the uncertainty of which rules even apply, the arbitration rules merely give the arbitrator discretion to allow for appropriate discovery, **which the Court of Appeal has deemed unconscionable**. See *Beco, supra*, 86 Cal.App.5th at 311-312. Even further, the Agreement here **inappropriately grants the arbitrator unfettered authority "in all circumstances" to issue discovery orders "as the arbitrator considers necessary."** *Id.* In other words, **the Arbitrator**

---

**in his or her sole discretion can preclude Plaintiff from obtaining whatever formal discovery the arbitrator feels is not necessary to explore the issues in dispute**. As such, the Agreement does not guarantee adequate discovery and is, therefore, substantively unconscionable.

### f.   The Agreement's Infinite Duration Is Unconscionable

The Agreement states, "[t]his Agreement shall survive the employer-employee relationship between the parties and shall apply to any covered Claim whether or not it arises or is asserted during or after termination of employment." Dkt. 21-3, Exhibit B [Agreement], p. 16. The Agreement, therefore, has an infinite duration as to any claim against Defendant or any of the enumerated third parties, which the Court in *Cook* concretely determined was unconscionable.

In *Cook*, the trial court found the agreement was unconscionable because "it survived indefinitely" following the plaintiff's termination. (*Cook, supra*, 102 Cal. App. 5th at 325-26.) Specifically, "[t]he agreement expressly states that it 'shall survive the termination of Employee's employment, and may only be revoked or modified in a written document that expressly refers to the 'Agreement to Arbitrate Claims' and is signed by the President of the University.'" *Id*. Relying on *Zee Medical Distributor Assn. Inc. v. Zee Medical, Inc.*, 80 Cal.App.4th 1 (2000), *Cook* held that provision was "an express term of duration" and "**the inclusion of such language also shows the parties did not contemplate that the arbitration agreement would be terminable at will.**" *Id.*

Here, the Agreement is even more extreme and unconscionable, as there are not any circumstances under which the Agreement can terminate. To the contrary, the Agreement survives "the employer-employee relationship between the parties and shall apply to any covered Claim whether or not it arises or is asserted during or after termination of employment ." Dkt. 21-3, Exhibit B [Agreement], p. 16.  Further, to the extent that the Agreement is found unenforceable, then "any prior arbitration agreement you may have with the Company or **the Affiliated Entities** shall survive." *Id*. at p. 17.  Thus, even when the Agreement if found unenforceable, Defendant embedded a "fail-safe**" to unconscionably resurrect prior arbitration agreements between not only Plaintiff and Defendant but also Plaintiff and any other Affiliates Entity, who is not similarly bound by the terms of this Agreement**. Accordingly, the Agreement's duration is unconscionable, adding another layer to the overarching substantive unconscionability permeating this Agreement.

**g.    The Agreement Fails To Guarantee Attorneys' Fees To A Prevailing Plaintiff, Which Amounts To A Limitation Of Plaintiff's Remedies**

The Agreement attempts to deny Plaintiff the right to attorneys' fees guaranteed under the Labor Code. The various provisions of the Labor Code applicable in this case **require** attorneys' fees and costs to a prevailing plaintiff—they do not simply give a court – or an arbitrator –  the authority to make the decision. Specifically,  Labor Code § 1194(a) states, "any employee receiving less than . . . the legal overtime compensation . . . **is entitled to recover**…**reasonable attorney's fees, and costs of suit**." Similarly, Labor Code § 226(e)(1) states, "[a]n employee suffering injury as a result of a knowing and intentional failure by an employer to comply with subdivision (a) is…**entitled to an award of costs and reasonable attorney's fees**", and  Labor Code § 2802(a) and (c) provide that an "employer shall indemnify his or her employee for a necessary expenditures or losses…" which "shall include all reasonable costs, **including, but not limited to, attorney's fees** incurred by the employee enforcing the rights granted by this section."

Here, the Agreement merely provides, "[t]he arbitrator *may* award any form of remedy or relief that would be available if a court heard and decided the same Claim." Dkt. 21-3, <u>Exhibit B</u> [Agreement], p. 16.  However, the Agreement completely fails to **guarantee** attorneys' fees and costs to a prevailing plaintiff .  This discretion left in the hands of the arbitrator amounts to a limitation of remedies not permitted under *Armendariz*.  See *Armendariz, supra*, 24 Cal.4th at 103-104 [stating, "[t]he principle that an arbitration agreement may not limit statutorily imposed remedies such as punitive damages and attorney fees appears to be undisputed," and concluding that a damages limitation in the arbitration agreement in that case was "contrary to public policy and unlawful"].)  Accordingly, this provision limits the right to relief and specifically the statutory damages to which Plaintiff would be entitled if the claims were litigated in a judicial forum and is, therefore, unfair, one-sided, and unconscionable.

**h.    The Agreement Requires Unlawful "Bellwether Procedures"**

A significant portion of the Agreement is dedicated to enforcing "Bellwether Arbitration Procedures" which are unlawful and have a chilling effect on Plaintiff's claims.  Dkt. 21-3, <u>Exhibit B</u> [Agreement], p. 17.

---

In general, "a bellwether trial is a test case that is typically used to facilitate settlement in similar cases by demonstrating the likely value of a claim or by aiding in predicting the outcome of tricky questions of causation or liability." *Briggs v. Merck Sharp & Dohme*, 796 F.3d 1038, 1051 (9th Cir. 2015); see also *Dunson v. Cordis Corp.*, 854 F.3d 551, 555 (9th Cir. 2017) [bellwether trial may be used for "informational purposes"]  Specifically, as it applies to arbitrations, the Agreement requires that "bellwether arbitration procedures shall be used when more than 10 cases pending at the same time present substantially similar or overlapping allegations of fact or law." Dkt. 21-3, Exhibit B [Agreement], p. 17.  The Agreement proceeds to explain that "no more than 10 cases will be active at any one time. All remaining cases will be stayed , with the statute of limitations tolled. As soon as one of the original active cases is resolved (by decision, settlement, or otherwise), a stayed arbitration shall replace it on the list of 10 active cases."  These are the precise type of arbitration procedures that have been found unconscionable and unenforceable by federal courts on the grounds that they are asymmetrical in application and add undue delay and cost to Plaintiff in violation of the California Code of Civil of Procedure and the standards set forth in *Armendariz, supra,* 24 Cal.4th at 103, 111–12.

In *MacClelland v. Cellco Partnership*, 609 F.Supp.3d 1024 (N.D. Cal. 2022), the Court found a Mass Arbitration provision (like Defendant's bellwether procedures here) served to delay the plaintiff's claims until after the first ten cases selected for arbitration had been resolved was substantively unconscionable. "**Requiring consumers who retain counsel willing to represent them in cases such as this to wait months, more likely years before they can even submit a demand for arbitration is "unreasonably favorable to [Defendant**]." The Court held, "**justice delayed is justice denied**." *Id.* at 1042.

Here, just as in *MacClelland*, if Plaintiff's action is not selected to proceed as one of ten Bellwether arbitrations, Plaintiff will find his case "stayed" for an indefinite period of time while the Bellwether Arbitrations proceed to arbitration and adjudication, and they stay will only be lifted *if* "one of the original active cases is resolved (by decision, settlement, or otherwise)" and *if* Plaintiff's case is selected to "replace it on the list of 10 active cases." Dkt. 21-3, Exhibit B [Agreement], p. 17.  There is no limit on the delay, and no express obligation on the part of

Defendant to complete the Bellwether arbitration procedures in any reasonable of finite period of time. This provision can only be read to unfairly benefit Defendant with no reciprocal protections extended to Plaintiff. See *MacClelland*, 609 F.Supp.3d  at 1042; See also *Pandolfi v. AviaGames, Inc.*, 2024 U.S. Dist. LEXIS 159007 at *20 (N.D. Cal. Sept .4 2024 ["**That prospect of delay…likely has a chilling effect on players, deterring them from vindicating their rights**]; *Id* at *36 ["**to avoid the bellwether provision, players would have to find different counsel, which affects the right to counsel of their choice or indeed, the ability to find any counsel at all**."]

Further, because the cases are "batched" together, Plaintiff will have limited to no input into the arbitrator selection process despite the arbitrator's active employment by – and continued involvement with – Defendant in numerous other similar cases, in violation of California Code of Civil Procedure, §§ 1281.9 and 1281.91(b)(1).  See *Heckman v. Live Nation Ent. Inc.*, 120 F.4th 670, 687 (9th Cir. 2024) [finding that this procedure violates state law because it prevents the employees' right to disqualify an arbitrator]; citing *Heckman v. Live Nation Ent., Inc.*, 686 F. Supp.3d 939, 967, n. 21 (C.D. Cal 2023).

Moreover, the Agreement's Bellwether Arbitration Procedures unilaterally benefits Defendant by requiring that JAMS effectively treat each batch of demands as one matter, significantly delaying and limiting arbitration fees owed by Defendant because "[u]ntil a case is on or is moved to the list of 10 active cases…the Company shall have no obligation to pay any JAMS or arbitrator fees" in violation of California Code of Civil Procedure, §§ 1281.97 and 1281.98 [requiring payment within 30 days of invoice].

Finally, Plaintiff's only recourse from the "Bellwether Arbitration Procedures" is to petition **the Company** for a waiver based on "undue hardship,' and if denied, then petition JAMS for a waiver based on the even tougher "exceptional hardship" standard.   (Dkt. 21-3, Exhibit B [Agreement], p. 17).  This process is expensive, time-consuming, and shifts the burden to Plaintiff to prove he should be afforded rights that are automatically offered to him under the California Code of Civil Procedure.

In summary, Defendant's "Bellwether Arbitration Procedures" violate federal and state law requirements that are so "overly harsh or one-sided," as to unequivocally represent a "systematic

effort to impose arbitration…as an inferior forum" designed to work to Defendant's advantage. See *Armenderiz*, supra, 24 Cal.4th at 111-112; *OTO, LLC, supra*, 8 Cal.5th at 130; *Heckman, supra*, 120 F.4th at 688.

### B. The Arbitration Agreement Cannot Be Cured Through Severance Because The Unconscionability Has Permeated The Entire Agreement

Finally, any claim by Defendant that the Agreement can be cured through severance is mistaken, as an arbitration agreement is unenforceable and unseverable if it is permeated by unconscionability. *Armendariz*, *supra*, 24 Cal.4th at 122. "Under California law, multiple unconscionable provisions suggest that the overall intention of the arbitration agreement was to force employees into an unfair arbitration, and it is not abuse of discretion to refuse to enforce the agreement." *Lou v. MA Labs.,* Inc.,2013 U.S. Dist. LEXIS 70665, at \*16 (N.D. Cal. May 17, 2013), citing *Armendariz*; see also *Nagrampa v. MailCoups, Inc.,* 469 F.3d 1257, 1293 (9th Cir. 2006) [holding the Court is not obligated to "blueline" when an "arbitration provision is so permeated by substantive unconscionability that it cannot be cured by severance or any other action short of rewriting the contract"]. "Such multiple defects indicate a systematic effort to impose arbitration ... not simply as an alternative to litigation, but as an inferior forum that works to the [employer's] advantage.'" *Dougherty v. Roseville Heritage Partners,* 47 Cal.App.5th 93, 107 (2020).

To that end, "severing bad arbitration clauses allows employers and other drafters to draft one-sided agreements and then negotiate down to the least-offensive agreement if faced with litigation; rather, employers should draft fair agreements initially." *Lou*, *supra*, 2013 U.S. Dist. LEXIS 70665, at \*16.

Moreover, where, like here, the Agreement is permeated by unconscionability:

> The overarching inquiry is whether "'**the interests of justice**…**would be furthered'**' by severance**." (*Armendariz*, *supra*, 24 Cal.4th at p. 124.) Here, **for the same reasons as in, it would not**. There are **multiple substantively unconscionable provisions**. … "**Such multiple defects indicate a systematic effort to impose arbitration on an employee not simply as an alternative to litigation, but as an inferior forum that works to the employer's advantage**.

*Beco, supra,* 86 Cal. App. 5th at 313.

Here, the Agreement is clearly permeated by unconscionability and cannot be cured through

---

severance. Indeed, the: **(1) lack of mutuality, (2) overbroad scope, (3) infinite duration, (3) illegal representative PAGA waiver, (4) limitation on remedies, (5) inadequate discovery, and (6) unlawful Bellwether procedures**, **coupled with the severe procedural unconscionability, preempt any possibility of severance**. Further, "Civil Code section 1670.5 does not authorize [the type of] reformation by augmentation" that would be required to cure this Agreement, and Courts have no "such power under their inherent, limited authority to reform contracts." *Armendariz, supra*, 24 Cal.4th at 125.   Nor can the Agreement be cured by a retroactive willingness by Defendant to change the Agreement – "Such a willingness" is "at most, as an offer to modify the contract" and **no contract law "permits a party to resuscitate a legally defective contract merely by offering to change it**." *Id.*

### C. <u>Class Claims Should Not Be Dismissed, Nor Should This Matter Be Stayed</u>

As established herein, Defendant's Agreement is riddled with procedural and substantive unconscionability and cannot be cured through severance. Accordingly, the purported "class or collective action" waiver is unenforceable, and all class claims should remain in Court. See e.g., *Armendariz*, supra, 24 Cal.4th at p. 122. [Court refusal to enforce an entire agreement when the agreement is "permeated" by unconscionability.]; see also e.g., *Murphy v. Check 'N Go of California, Inc.,* 156 Cal. App. 4th 138 (2007) [same]. Likewise, there is no basis to stay this action, as no portion of Plaintiff's claims should be compelled to arbitration.

### V. <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff respectfully requests the Court deny Defendant's Motion in its entirety.

Dated: November 7, 2025

**BLUMENTHAL NORDREHAUG BHOWMIK DE BLOUW LLP**
*/s/ Jeffrey S. Herman*
Jeffrey S. Herman
Attorneys for Plaintiff

## CERTIFICATE OF SERVICE [F.R.C.P. §5]

I am a citizen of the United States and a resident of the State of California. I am employed in the County of San Diego, State of California. I am over the age of 18 and not a party to the within action. My business address is 2255 Calle Clara, La Jolla, California 92037. On November 7, 2025, I served the document(s) described as below in the manner set forth below:

(1) **PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION AND DISMISS ALL CLAIMS;**

(2) **DECLARATION OF WILLIAM GUSTIN FILED IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION AND DISMISS ALL CLAIMS; AND**

(3) **PLAINTIFF'S OBJECTIONS TO DEFENDANT'S EVIDENCE FILED IN SUPPORT OF DEFENDANT'S MOTION TO COMPEL ARBITRATION AND DISMISS ALL CLAIMS**

_XX_ (BY ELECTRONIC SERVICE): I caused the listed documents to be electronically filed through the CM/ECF system at the United States District Court for the Eastern District of California which generates a Notice of Electronic Filing to all parties and constitutes service of the electronically filed documents on all parties for purposes of the Federal Rules of Civil Procedure.

_XX_ (Federal): I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made, and that the foregoing is true and correct under penalty of perjury.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed on November 7, 2025 at San Diego, California.

*/s/ Jeffrey S. Herman* .
Jeffrey S. Herman